Kipsborough Realty Corp. v. Commissioner.
Kipsborough Realty Corp. v. Commissioner
Docket No. 27676.
United States Tax Court
1951 Tax Ct. Memo LEXIS 85; 10 T.C.M. (CCH) 932; T.C.M. (RIA) 51291; September 28, 1951
*85 F. W. Oberkirch, C.P.A., 330 W. 42nd St., New York, N. Y., for the petitioner. Michael J. Kenny, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent determined deficiencies in the income and declared value excess profits taxes of petitioner for the fiscal year ended June 30, 1946, in the respective amounts of $1,654.19 and $994.81. The issues are whether respondent erred in disallowing (1) a deduction of $4,500 for interest paid, and (2) deductions for officers' compensation and salaries to the extent of $1,980 and $1,320, respectively. Findings of Fact A stipulation of facts filed by the parties is adopted as part of our findings. The petitioner is a corporation organized under the laws of the State of New York for the purpose of acquiring and holding title to real property located at 301-305 East 37th Street, New York City. It filed its corporation income and declared value excess profits tax returns for the fiscal year ended June 30, 1946, with the collector of internal revenue for the second district of New York. It keeps its books and files its tax returns on an accrual basis. In the early part of 1942, Otto Wolf, *86 Emil Wolf, Ernest S. Wolf, Rosalie Wolf (also referred to as Rosy Wolf) and Herman Wolf, all of whom are related, consulted an attorney with reference to a contemplated purchase of real estate. He advised them to form a corporation for that purpose. Pursuant to plan, petitioner was organized on June 10, 1942, and a letter signed by those five persons, dated June 14, 1942, was addressed to petitioner as follows: "June 14, 1942 "Kipsborough Realty Corp. 123 William Street New York, New York
"Gentlemen: "In connection with the contemplated purchase by your corporation of premises 303 East 37th Street, New York City, each of the undersigned hereby offers to lend to your corporation the following sums: Otto Wolf
$30,000.00
Emil Wolf
20,000.00
Ernest S. Wolf
10,000.00
Rosalie Wolf
10,000.00
Herman Wolf
5,000.00
"It is our proposal that these sums be repaid to us on demand with interest at the rate of 6% per annum and that they be evidence by promissory notes in the amount of the indebtedness bearing interest at said rate payable on demand and executed by your corporation. "It is also our proposal that in addition to the issuance of the said promissory *87 notes your corporation will issue to us fifteen (15) shares of stock for which we shall pay the sum of $5.00 per share in the following manner: Otto Wolf
six (6) shares
Emil Wolf
four (4) shares
Ernest S. Wolf
two (2) shares
Rosalie Wolf
two (2) shares
Herman Wolf
one (1) share
"It is our further understanding that your corporation will make every effort to obtain a second mortgage, the avails of which shall be applied toward the reduction or retirement of the above mentioned proposed loans. "Yours very truly, /s/ Otto Wolf, Emil Wolf, Ernest S. Wolf, Rosalie Wolf, Herman Wolf" The offer contained in the letter was approved at the first meeting of the incorporators of the petitioner on June 14, 1942, and was approved and accepted at the first meeting of its directors on the same date. At the latter meeting the officers of petitioner were authorized and directed to execute notes and other necessary papers and documents. The petitioner's issued and outstanding stock, consisting of fifteen shares, was issued to the five persons in the amounts specified in the letter and they paid $5 per share therefor. Petitioner also received from these same persons $75,000 *88 in cash, each contributing the portion of this amount designated in the letter. On June 18, 1942, the petitioner purchased the East 37th Street property, which consisted of land and an apartment house containing 83 apartments of 2, 3 and 4 rooms. The purchase price was $438,200. Petitioner paid $75,000 in cash with the funds furnished by its five stockholders, and assumed a first mortgage obligation in the amount of $363,200. Petitioner also executed and delivered to its five stockholders promissory unsecured notes dated June 22, 1942, payable on demand and bearing interest at 6 per cent, as follows: Otto Wolf
$30,000
Emil Wolf
20,000
Ernest S. Wolf
10,000
Rosalie Wolf
10,000 [1]
Herman Wolf
5,000 [1]
The property at East 37th Street was the only real estate ever purchased by the petitioner. Petitioner's board of directors at its meeting of June 14, 1942, fixed the salaries *89 of its officers as follows: President
$330.00 per month
Vice President
220.00 per month
Secretary
110.00 per month
Treasurer
110.00 per month
Assistant Treasurer
55.00 per month
During the four fiscal years ended June 30, 1943-1946, petitioner's gross receipts ranged from about $68,000 to about $70,000, but it sustained net losses in the first three years in the amounts of $1,563.05, $1,146.48, and $40.18, respectively, computed by deducting, among other items, interest on its notes and salaries to its officers. The petitioner paid the "interest' provided for in the notes issued by it monthly from the time of their issuance. From time to time it did not have sufficient funds on hand with which to make these monthly payments. In such instances it generally borrowed the amount necessary to make payment from one of its officers, and usually repaid the loan from rentals received in the following month. Petitioner claimed a deduction in the amount of $4,500 as interest paid during the fiscal year ended June 30, 1945, with respect to the notes. The Commissioner disallowed the deduction. The officers of the petitioner and the salaries paid to them (pursuant *90 to authorization of its board of directors of June 14, 1942) during the fiscal year ended June 30, 1946, were as follows: Amount
Name
Elected
Title
Per Month
Per Year
Otto Wolf
June 14, 1942
President
$330.00
$3,960.00
Emil Wolf
June 14, 1942
Vice President
220.00
2,640.00
Rosalie Wolf *
June 14, 1942
Secretary
110.00
660.00
Julie Kaiser
January 5, 1946
Secretary
110.00
660.00
Ernest S. Wolf
June 14, 1942
Treasurer
110.00
1,320.00
Antoinette Wolf
May 1, 1945
Assistant Treasurer
55.00
660.00
$9,900.00
An accountant employed by the petitioner did its acounting work and kept most of its office records. A superintendent located on the premises collected the rent from the occupants of the apartment house and handled any complaints received from them. In petitioner's income tax return for its fiscal year ended June 30, 1946, it deducted the amount of $8,580 as compensation paid to officers and $1,320 as salaries and wages paid. The Commissioner allowed as deductions the full amount paid as compensation for services paid to Emil and Otto Wolf. He disallowed the deduction for *91 compensation of officers in the amount of $1,980 and salaries in the amount of $1,320. In the statement accompanying the notice of deficiency, the Commissioner made the following explanation of his adjustments: "(b) and (c) Deductions claimed for payments made to Ernest Wolf, Herman Wolf and Rosy Wolf have been disallowed in the amounts shown below for the reason that you have failed to establish that such payments were made for services rendered by the aforementioned individuals. "Compensation of officers disallowed: Amount
Ernest Wolf
$1,320.00
Herman Wolf
660.00
Total disallowed
$1,980.00
"Salaries and wages disallowed: Amount
Rosy Wolf
$1,320.00" Herman Wolf was erroneously listed in place of Rosy Wolf, and Rosy Wolf was erroneously listed in place of Julie Kaiser and Antoinette Wolf. The errors in the names of these persons were occasioned by errors in the books and records of the petitioner. Opinion RAUM, Judge: 1. The Commissioner's disallowance of the so-called interest deduction in the amount of $4,500 rests on the contention that the amounts aggregating $75,000 furnished to petitioner by its five stockholders were in the *92 nature of capital investments and did not constitute bona fide loans. Whether amounts advanced to a corporation by its stockholders are to be treated as loans or capital contributions depends upon the facts in each case, and the label which the parties have given to the transaction is not conclusive. The answer turns upon whether the parties intended the amounts to be repaid in any event, as would be the case if they were dealing at arm's length, or whether the stockholders were merely placing the amounts at the risk of the business. The issue is a factual one, and it is sometimes difficult to reconcile the results reached in cases that appear to present similar situations. Compare, for example, John Kelley Co. v. Commissioner with Talbot Mills v. Commissioner, both reported at . We have examined all the facts in this case, and are satisfied that there was no bona fide intention to create genuine loans. Petitioner was organized to purchase a parcel of real estate for $438,200. Its total capital stock consisted of fifteen shares, issued at $5 each. The alleged loans, aggregating $75,000, were made simultaneously by the stockholders, in precisely the same proportion *93 as their stock interests. The result was a debt structure of $75,000 as against a nominal capital stock investment of $75, or a 1,000 to 1 ratio of indebtedness to capital stock. Obviously, petitioner could not have purchased the property with the $75 which its five stockholders invested in its stock; nor are we persuaded that, with such nominal capitalization, it could have borrowed $75,000 on its unsecured notes in any arm's length transaction. Petitioner stresses the fact that interest at the rate fixed was regularly paid on the notes here involved. This is indeed a very strong consideration, particularly where, as here, earnings were not always available for that purpose. And it is quite possible that in some cases this fact fight be pivotal. But when viewed against the background of all the facts involved in this case, we are satisfied that the advances herein were capital contributions and did not constitute bona fide loans. Although not squarely in point, since no two cases of this type are exactly alike, the following cases point the way to the result which we reach: ; ; ; *94 , affirmed, (C.A. 9), certiorari denied, ; 1432 Broadway Corp., 4 T.C. 1158, affirmed, (C.A. 2); Edward G. , affirmed, (C.A. 2); ; (C.A. 2). 2. The Commissioner disallowed deduction for "compensation" paid to Ernest Wolf in the amount of $1,320. Since petitioner offered no evidence to show what services, if any, were rendered by the recipient, that disallowance must stand. The Commissioner also disallowed deductions for "compensation" in the amount of $660 to Herman Wolf and "salaries and wages" to Rosy Wolf in the amounts of $660 and $1,320, respectively. Herman Wolf was erroneously listed in place of Rosy Wolf as having received $660, and Rosy Wolf was erroneously listed in place of Julie Kaiser and Antoinette Wolf as having received $1,320. The Commissioner's inaccurate description of these items was occasioned by reliance upon unsatisfactory records kept by petitioner, and petitioner's accountant's *95 testimony persuades us that petitioner was not misled. No evidence was offered to show what services, if any, were rendered for the amounts involved by Rosey Wolf, Julie Kaiser, and Antoinette Wolf. In the circumstances, the disallowance must be approved. Decision will be entered for the respondent. Footnotes
1. Herman Wolf died on April 4, 1945, and his one share of stock and note were thereafter reissued to his widow, Antoniette Wolf. The two shares of stock and note originally issued to Rosalie Wolf were reissued to her mother, Selma Wolf, upon the death of Rosalie on December 18, 1945.↩
*. Died December 18, 1945.↩